UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHARLES B.,[1]

         Plaintiff,      DECISION AND ORDER

-vs-

                  1:19-CV-0641 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

_____

INTRODUCTION

   Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Oct. 14, 2019, ECF No. 9; Def.'s Mot., Dec. 13, 2019, ECF No. 11. Plaintiff argues that the Commissioner's denial of his application for DIB and SSI benefits should be reversed and remanded for further proceedings because the ALJ's physical residual functional capacity determination is not supported by substantial evidence, and because the ALJ erred in her mental residual functional capacity determination. The Commissioner

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

disputes Plaintiff's contentions.

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 9] is denied, the Commissioner's motion [ECF No. 11] is granted, and the Clerk of Court is instructed to close the case.

## LEGAL STANDARD

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Plaintiff protectively filed his DIB and SSI applications on May 20, 2015, alleging an onset date of February 6, 2015. Transcript ("Tr."), 162–71, Aug. 14, 2019, ECF No. 7. In his applications, Plaintiff alleged that his ability to work was limited by seizures, depression, and anxiety. Tr. 191. On September 2, 2015, the Commissioner determined that Plaintiff was not disabled, and that he did not qualify for either DIB or SSI benefits. Tr. 59–82. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 93.

Plaintiff's request was approved, and the hearing was held via videoconference, with the Plaintiff appearing with his counsel in Buffalo, New York, and an impartial vocational expert also joining by phone. Tr. 31. When the ALJ invited Plaintiff's counsel to present an opening statement, he responded as follows:

> [Plaintiff] suffers from a combination of exertional and nonexertional restrictions and limitations, which prevent him from working on a regular and continuing basis, as defined in the regulations of Social Security. [Plaintiff]'s limitations are caused by impairments, which include a seizure disorder, panic disorder, as well as, an adjustment disorder . . . . As evidenced in the medical record provided, [Plaintiff] has a long history of frequent seizures, which prevent him from working . . . . [And,] if he exerts himself too much, there's lightheadedness and dizziness . . . .

Tr. 32–33.

Upon examination by the ALJ and by his attorney, Plaintiff testified that he has seizures even when compliant with his medications (Tr. 43), loud noises and flashing lights tend to trigger his seizures (Tr. 43), he gets light-headed from too much exertion (Tr. 48), he has issues with his memory (Tr. 49), and he has trouble controlling his moods (Tr. 52). Plaintiff also testified that he has never had a driver's license, and gets rides from his brothers and sisters. Tr. 41. He has lived with his sister for three years, but does not do chores around the house, prepare meals, do his own laundry, shovel the snow, or mow the grass. Tr. 42. Instead, his sister – who has a full-time job – takes care of everything while he watches T.V. in the house with his niece. Tr. 42. When asked why he doesn't help out, Plaintiff testified: "I guess it's her house . . . I never questioned he[r] about it, and she never asked me to do that stuff." Tr. 51. In the event he was asked to help, Plaintiff testified that his help would most likely be "limited." Tr. 51.

In her decision on June 26, 2018 denying DIB and SSI benefits to Plaintiff, the ALJ found that Plaintiff met the special insured status requirements of the Social

Security Act through December 31, 2019. Tr. 18. At step one of the five-step evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 6, 2015, the alleged onset date. Tr. 18. At step two, the ALJ determined that Plaintiff has several severe impairments: seizure disorder, panic disorder, and chronic adjustment disorder with depressed mood. Tr. 18. The ALJ also noted "indications in the record of other impairments, including vitamin D deficiency and a right shoulder contusion," but found those impairments to be non-severe. Tr. 18.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19. In so doing, the ALJ utilized the "special technique" required by 20 C.F.R. § 404.1520a,[2] and determined that Plaintiff's alleged mental impairments caused moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. Tr. 19. In support of this finding, the ALJ noted that the

---

[2] The listings of specific mental impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1 § 12.00") provide the ALJ with detailed guidance for application of the "special technique." Generally, a claimant must satisfy at least two classes of criteria to justify a finding of a mental disorder. "Paragraph A" criteria include the "the medical criteria that must be present in [a claimaint's] medical evidence" to indicate a particular disorder (e.g., the mental disorder of "schizophrenia" requires that the evidence include medical documentation of hallucinations or another similar symptom). App'x 1 § 12.00A(2)(a). "Paragraph B" criteria are the four functional areas of (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. App'x 1 § 12.00A(2)(b). "Paragraph C" criteria are used to evaluate whether a claimant has a "serious and persistent" mental disorder.

consultative examiner concluded that Plaintiff's attention, concentration, and memory were impaired. Tr. 19. However, the ALJ also pointed out that Plaintiff never sought treatment for his mental impairments beyond psychiatric medication prescribed by non-specialists, clinical psychological observations by treatment providers had been generally normal, and the consultative examiner found Plaintiff's insight to be fair and judgment good. Tr. 19.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the residual functional capacity[3] ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations:

> He must avoid all exposure to unprotected heights, dangerous machinery, and operation of a motor vehicle. He must avoid all exposure to flashing lights or a work environment where there are loud noises. He can follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, and make appropriate decisions. He is limited to low-stress jobs, defined as those with no more than occasional interaction with co-workers and the public.

Tr. 20. Based on this RFC, at step four the ALJ found that Plaintiff is unable to perform his past relevant work as an inspector and a building maintenance laborer. Tr. 22. However, based on Plaintiff's age, education, work experience, and RFC, and on the testimony of the impartial VE, the ALJ found Plaintiff would be able to perform such jobs in the national economy as a marking clerk, housecleaner, or dining room attendant. Tr. 23. Hence, the ALJ concluded that Plaintiff *is not* disabled for the

---

[3] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

purposes of DIB or SSI. Tr. 23–24.

On March 22, 2019, the Social Security Administration's Appeals Council denied Plaintiff's request for further review of the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner.

DISCUSSION

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a "disability" that would entitle him or her to DIB and SSI benefits. *See also* 42 U.S.C. § 1383(c)(3). "The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the Secretary, and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted).

Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the

court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

In the present case, Plaintiff maintains that the Commissioner's decision denying him DIB and SSI benefits must be remanded for further administrative proceedings on two grounds: (1) the ALJ's decision was not supported by substantial evidence because the ALJ failed to rely on any opinion evidence while determining Plaintiff's physical RFC; and (2) the ALJ erred by failing to fully account for Plaintiff's memory limitations and assigning controlling weight to an internally inconsistent opinion. Pl. Mem. of Law, Oct. 14, 2019, ECF No. 9-1.

The ALJ's Physical RFC

In reaching Plaintiff's RFC determination, the ALJ considered the medical opinion of Plaintiff's treatment provider, certified physician's assistant ("P.A.") Gary C. Wysocki. Tr. 21. The ALJ gave only partial weight to P.A. Wysocki's opinion, noting that it was "partly but not entirely consistent with the record." Tr. 21. In particular, the ALJ noted that P.A. Wysocki indicated that Plaintiff's seizures occurred once a month, while the other evidence in the record indicated it was closer to once or twice a year. Tr. 21. Nevertheless, in formulating her RFC determination, the ALJ "essentially adopted P.A. Wysocki's proposed environmental limitations . . . . [and] included additional environmental limitations based on the need to avoid triggering a seizure." Tr. 21.

Plaintiff maintains that this RFC determination is not supported by substantial evidence because the ALJ "did not assign controlling weight to any opinion and proceeded to craft an RFC determination using her own lay interpretation of Plaintiff's treatment." Pl. Mem. of Law at 9. Additionally, Plaintiff argues that "[a]fter failing to assign controlling weight to any opinion, the ALJ should have obtained [additional] medical opinion evidence to determine Plaintiff's limitations." Pl. Mem. of Law at 10–11. That is, Plaintiff argues the ALJ's rejection of P.A. Wysocki's argument created a gap in the evidentiary record that it was the ALJ's duty to fill. The Court finds no merit in these arguments.

In the present case, the ALJ's RFC determination is consistent with the record as a whole, and supported by substantial evidence. "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The substantial evidence standard means that once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (citation omitted).

Here, the ALJ had hospital records from Plaintiff's emergency room visits for seizures in September 2009 (Tr. 254), March 2010 (Tr. 270), April 2010 (Tr. 283). August 2011 (Tr. 293), September 2012 (Tr. 298), June 2014 (Tr. 306), July 2014 (Tr. 320), April 2015 (Tr. 238), May 2015 (Tr. 329), February 2016 (Tr. 329), May 2016 (Tr. 380), June 2016 (Tr. 462), April 2017 (Tr. 356), May 2017 (Tr. 365), and January 2018 (Tr. 481). Although these records indicate Plaintiff's seizures occur slightly more than once or twice per year as suggested by the ALJ, they also show a frequency far less than the once per month that P.A. Wysocki indicated in his opinion. Tr. 21, 494; *see also* Tr. 283 (Plaintiff reporting his seizures occur with "irregular frequency"). In addition, the vast majority of Plaintiff's hospital records show that his physical state went "back to baseline" during the same day as a seizure (e.g., Tr. 270), and P.A. Wysocki's treatment notes from Plaintiff's follow-up appointments in the weeks after a seizure typically show that a general examination yields normal results (e.g., Tr. 238). Indeed, a number of Plaintiff's seizures seem to occur as a result of not taking his prescription medications. *See, e.g.*, Tr. 306 (reporting after his June seizure that he ran out of his medication a month prior to the seizure).

Additionally, Plaintiff cites a decision of this Court to support the proposition that "[a]n RFC determination made without the benefit of a medical opinion is insufficient to support the substantial evidence standard." See Pl. Mem. of Law at 12 (quoting *Maddox v. Saul*, No. 18-CV-6201-CJS, 2019 WL 4743656, at *7 (W.D.N.Y. Sept. 30, 2019)). However, *Maddox* is distinguishable from the present case. In

10

*Maddox*, the Court was confronted with a situation in which "the ALJ had to base his RFC determination solely on non-medical evidence." *Maddox*, 2019 WL 4743656 at *7. In that situation, the Court held that "in the absence of medical evidence, the ALJ may not substitute his own lay opinion to reach an RFC conclusion." *Id.* To reach that conclusion, though, the Court had to distinguish the *Maddox* circumstances – i.e., an RFC based solely on non-medical evidence – with the circumstances of *Matta v. Astrue*, 508 F. App'x 53 (2d Cir. 2013). In *Matta*, the Second Circuit affirmed the RFC determination of an ALJ that did not "perfectly correspond" with a medical opinion in the record because it was nevertheless consistent with the medical evidence in the record as a whole. *Matta*, 508 F. App'x at 56.

The Court finds the present case, in which there is ample other medical evidence in the record, more akin to *Matta* than to *Maddox*. Consequently, the Court finds that the ALJ did not commit legal error by declining to request additional medical opinion evidence, and the ALJ's determination of Plaintiff's physical RFC is supported by substantial evidence.

<u>The ALJ's Treatment of the Consultative Examiner's Opinion</u>

Plaintiff saw consultative examiner Gregory Fabiano, Ph.D. for a psychiatric evaluation on July 18, 2015. Tr. 341. In his report, Dr. Fabiano stated that Plaintiff was cooperative, and that his social skills and manner of relating were adequate. Tr. 342. He found that Plaintiff was well-groomed, and had fluent speech, coherent and goal-directed thought processes, appropriate affect, euthymic mood, fair insight, and

11

good judgment. Tr. 342–43. However, Dr. Fabiano found Plaintiff's attention and concentration, and his recent and remote memory skills, to be impaired. Tr. 343. He also found Plaintiff's intellectual functioning to be below average to borderline. Tr. 343. Overall, Dr. Fabiano concluded that:

> [Plaintiff] does not appear to have evidence of limitations in his ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, or make appropriate decisions. He appears to have moderate limitations in his ability to relate adequately with others and appropriately deal with stress. The claimant appears to have moderate limitations in his ability to maintain attention and concentration, learn new tasks, and perform complex tasks independently.

Tr. 344. The ALJ assigned "great weight" to the opinion because Dr. Fabiano had the opportunity to examine the Plaintiff, and his opinions were consistent with the non-examining state psychological consultant, and with the evidence in the record. Tr. 22.

Plaintiff maintains that the ALJ's assignment of "great weight" to Dr. Fabiano's opinion was error because the report was inadequate or incomplete pursuant to 20 C.F.R. § 404.1519p. Pl. Mem. of Law at 12. Plaintiff notes that in the "mental status examination" section of his report, Dr. Fabiano found that Plaintiff's memory skills were "impaired," but that Dr. Fabiano's "medical source statement" at the conclusion of his report failed to include memory limitations. Therefore, Plaintiff argues that Dr. Fabiano's report is "internally inconsistent" pursuant to § 404.1519p(a)(2), and that the ALJ was required to contact Dr. Fabiano and seek a revised report pursuant to § 404.1519p(b). The ALJ's failure to do so, Plaintiff believes, is error. Pl. Mem. of Law at 14.

12

The Court finds Plaintiff's argument unavailing, as a review of the ALJ's decision and Dr. Fabiano's full report shows that the report "serves as an adequate basis for decision[-]making in terms of the impairment it assesses." 20 C.F.R. § 404.1519p(a)(1). In her decision, the ALJ specifically noted that "there were some abnormal results at the consultative exam," and that Plaintiff's memory was found to be impaired. Tr. 21–22. The ALJ took Plaintiff's memory impairment into consideration while employing the "special technique" at step three of the five-step evaluation process, and therefore found that Plaintiff had a moderate limitation in the area of mental functioning of "understanding, remembering, or applying information." Tr. 19. Furthermore, consistent with this moderate limitation in the functional area of "understanding, remembering, or applying information," the ALJ included in her RFC determination the non-exertional limitation that Plaintiff could follow and understand only "simple" directions and instructions. Tr. 20. The Court declines to find that the consultative examiner's report was not an adequate basis for decision-making pursuant to 20 C.F.R. § 404.1519p when the ALJ expressly considered the examiner's finding of "impaired" memory skills in her decision, and did not in any way suggest that the finding, or the report in general, was inadequate.

Accordingly, the Court finds no error in either the ALJ's failure to request a revised report from Dr. Fabiano, or in the ALJ's assignment of "great weight" to Dr. Fabiano's opinion with regard to Plaintiff's mental impairments.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 9] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 11] is granted. The Clerk of Court is directed to close this case.

DATED:   March 29, 2021
         Rochester, New York

                                    /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge